UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAMELA WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>GYRUS ACMI, LP, et al.,<br><br>    Defendants. | Case No.  14-cv-00805-BLF<br><br>**ORDER GRANTING DEFENDANT GYRUS ACMI, LP'S PARTIAL MOTION TO DISMISS, WITH PREJUDICE**<br><br>[Re:  ECF 58] |

This is a wrongful termination and employment discrimination case brought by Plaintiff Pamela Williams, an African-American woman over the age of forty, against several defendants. Defendant Gyrus ACMI, LP ("Gyrus") brings this partial motion to dismiss Plaintiff's seventh, eighth, and ninth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds this motion suitable for disposition without oral argument. *See* Civil Local Rule 7-1(b). Having reviewed the briefing of the parties, as well as the governing law, the Court GRANTS Gyrus' partial motion to dismiss, with prejudice.

**I.     BACKGROUND**

Plaintiff's allegations in her Second Amended Complaint ("SAC") are taken as true for purposes of deciding this motion to dismiss.

Plaintiff brings suit against Gyrus and Olympus Corporation of the Americas ("Olympus"), alleging that the entities are "substantially identical parties." *See* SAC ¶¶ 4-13. Plaintiff served as a Territory Manager for Gyrus/Olympus[1] from May 2004 until her termination on November 30, 2011. SAC ¶ 43. Gyrus/Olympus specializes in the sale of medical devices, and Plaintiff sold

---

[1] Plaintiff refers to her former employer in this manner throughout portions of the SAC, consistent with her allegation that the two companies are overlapping and substantially identical entities.

various specialized medical devices to doctors, medical clinics, and hospitals in Northern California. SAC ¶ 44. Though Plaintiff regularly met her sales quotas during her employment, SAC ¶ 45, she avers that she was treated differently from her white male colleagues, including white men under the age of forty. SAC ¶ 46. After one of Plaintiff's "potential sales account[s]" was taken from her and given to a white male colleague in September 2009, Plaintiff complained to Gyrus/Olympus that "she believed she was being treated differently due to her race" and, on October 15, 2009, filed a complaint with the Department of Fair Education and Housing ("DFEH"). SAC ¶¶ 49, 50. A similar circumstance – the reassignment of one of Ms. Williams' accounts to the same white male colleague in April 2010 – prompted Plaintiff to file a second DFEH complaint in October 2010. SAC ¶¶ 53-54. This complaint alleged that the reassignment of her account was due to her race, age, and gender, and in retaliation for filing her first DFEH complaint. *See id.*

Plaintiff alleges that, beginning in August or September 2011, Gyrus/Olympus "began an active campaign to get Ms. Williams removed from the company." SAC ¶ 60. In October 2011, Plaintiff was placed on a Corrective Action Plan ("CAP"), *see id.* Exh. I, which "contained unrealistic and unattainable requirements and expectations that other employees . . . were not given." SAC ¶ 60. The CAP further warned Ms. Williams not to file "frivolous complaints." SAC ¶¶ 61, 62. Plaintiff once again told Gyrus/Olympus that she believed she was being treated differently because of her age, gender, and race, SAC ¶ 64, though no investigation was undertaken into this differential treatment and Plaintiff was again admonished not to file frivolous complaints. SAC ¶¶ 65, 66. Plaintiff then filed a third complaint with DFEH on October 25, 2011, which she mailed to Gyrus/Olympus, and was thereafter terminated on November 30, 2011. SAC ¶¶ 67-68. This suit followed.

Gyrus now seeks to dismiss Plaintiff's seventh cause of action for breach of implied contract, her eighth cause of action for breach of the implied duty of good faith and fair dealing, and her ninth cause of action for disparate treatment and adverse impact.[2]

---

[2] Plaintiff concedes the motion with regard to the seventh cause of action. *See* Opp. to Mot. to Dismiss at 7 ("Plaintiff agrees to omit [her] Breach of an Implied Contract Cause of Action

2

1   Plaintiff alleges in her eighth cause of action that the law imposed upon Defendants an
2   implied duty to act fairly and in good faith toward Ms. Williams, SAC ¶ 117, and that Defendants
3   breached this duty by interfering with Plaintiff's performance of her job duties. *Id.* Plaintiff
4   contends that she properly reported her complaints regarding harassment and employment
5   discrimination in reliance on Olympus' policies, but that "there never was a proper investigation
6   or response to Plaintiff's claims, which constitutes a violation of the employment agreement."
7   SAC ¶ 118. She claims that Defendants "acted in bad faith by assuring Ms. Williams she would be
8   covered by [Olympus'] policy against retaliation and then refusing to abide by it." SAC ¶ 120.

   In her ninth cause of action, Plaintiff alleges only that "Defendants' practice of eliminating
   senior employees such as plaintiff had a disparate impact on [Olympus'] workforce." SAC ¶ 123.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of its complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). A "short and plain statement" demands that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court, however, "need not accept as true allegations contradicted by judicially noticeable facts," nor "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).

---

(Seventh).""). The seventh cause of action is therefore DISMISSED, with prejudice.

United States District Court
Northern District of California

## III. DISCUSSION

Gyrus makes several arguments in support of dismissing the eighth and ninth causes of action.[3] With regard to the implied duty of good faith claim, Gyrus argues that Plaintiff fails to establish the existence of an underlying contract from which the implied covenant could arise, and because, even if Plaintiff could prove the existence of an underlying contract, there is no tort liability for a bad faith breach of an at-will employment agreement. *See* Mot. to Dismiss at 8-9. With regard to the disparate impact claim, Gyrus contends that Plaintiff fails to allege any facts in support of her claim and, moreover, that "there is no such cause of action." *Id.* at 9. Instead, Gyrus states, Plaintiff's disparate impact argument is merely a theory of liability that could be alleged via her race and age discrimination claims under California's Fair Employment and Housing Act ("FEHA"). *See id.* at 9-10.

Plaintiff makes several arguments in response. First, with regard to her eighth cause of action for bad faith, Plaintiff contends that the underlying contract giving rise to the duty of good faith was the October 2011 CAP, and that Gyrus' breached the covenant by "retaliating against Plaintiff by starting an 'active campaign to get Ms. Williams removed from the company.'" Opp. to Mot. to Dismiss at 5. As to her ninth cause of action, Plaintiff asks for leave to amend to clarify her cause of action, but does not articulate how her disparate treatment claim is a cause of action independent from her FEHA claims. For the reasons below, the Court agrees with Defendant.

### A. Breach of the Implied Covenant of Good Faith and Fair Dealing

Every contract "imposes upon each party a duty of good faith and fair dealing in its

---

[3] Gyrus also moves to strike the entirety of the SAC, contending that Plaintiff, though granted leave to amend by this Court's Order on Defendant Olympus' motion to dismiss, "took liberties" with the Court's Order and improperly amended to add new claims against Gyrus, a party that had already answered the FAC. *See* Mot. to Strike, ECF 57 at 1. The Court rejects this argument, for two reasons. First, the Court did not expressly limit Plaintiff's amendment of the FAC, and, given than Plaintiff had obtained new counsel following the filing of the FAC, granted leave to amend such that new counsel could file an SAC consistent with its theories of the case. *See, e.g.*, Dismissal Order at 1, 10 ("[A]s this is Plaintiff's first opportunity to amend in federal court, the Court finds it prudent to grant Plaintiff the chance to amend [her wrongful termination] claim."). The Court thus granted Plaintiff leave pursuant to Rule 15(a)(2) to amend the FAC. Second, Defendant does not argue that the SAC contains material that is redundant, immaterial, impertinent, or scandalous, such that Rule 12(f) would permit the Court to strike the SAC or portions thereof. As such, Gyrus' Motion to Strike is DENIED.

4

performance and enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988). However, in the employment context, "insofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 352 (2000) ("[T]here is no tort of 'bad faith breach' of an employment contract.").

In her SAC, Plaintiff contends that Gyrus violated the covenant because "there never was a proper investigation or response to Plaintiff's [harassment and discrimination] claims, which constitutes a *violation of the employment agreement*." SAC ¶ 118 (emphasis added). Having conceded her seventh cause of action for breach of employment contract, thus acknowledging that she was an at-will employee, an implied covenant claim arising from Plaintiff's employment agreement is invalid. *Guz*, 24 Cal. 4th 317, 350; *see also Lamke v. Sunstate Equipment Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004).

In her Opposition, however, Plaintiff's theory changes, alleging that her breach of implied covenant claim is actually "based on the CAP agreement signed and entered into on September 29, 2011." Opp. to Mot. to Dismiss at 5. Plaintiff contends that this CAP is a contract separate from her at-will employment agreement with Gyrus, and that it "created for Plaintiff an implied contract for continued employment assuming she met the requirements set forth in the Plan." *Id.*

In support of her argument, Plaintiff cites *Guz*, arguing that the *Guz* court intimated a possible exception to its general holding that breach of the covenant of good faith generally "has no function" in the employment context:

> We do not suggest the covenant of good faith and fair dealing has no function whatever in the interpretation and enforcement of employment contracts. As indicated above, the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. Thus, for example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned. We confront no such claim here.

*Guz*, 24 Cal. 4th 317, 353 n.18.

Plaintiff contends that this "clearly entitled" language permits her to bring an implied covenant of good faith claim off of the CAP, because the claim is distinct and independent from

5

her claim for wrongful termination. Plaintiff is incorrect, however, based on a reading of the plain language of the CAP and the governing law.

A case from this district, *Lamke v. Sunstate Equipment Co., LLC*, is instructive. In *Lamke*, a plaintiff sought to allege a violation of the implied covenant of good faith and fair dealing based on his employer's alleged failure to investigate the plaintiff's grievances prior to his termination. 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004). The Court found that, based on the plaintiff's allegations, his implied covenant claim was really just a claim for "termination without good or sufficient cause." *Id.* at 1048. *Lamke* considered the language in *Guz* on which Plaintiff herein relies, and found it unavailing: "While [footnote 18] in *Guz* leaves open the possibility of a claim for breach of the covenant of good faith and fair dealing under narrow circumstances, there are no allegations in the FAC as it currently stands that meet this narrow exception." *Id.*

In this case, Plaintiff clearly contends that Gyrus violated the implied covenant through "retaliatory actions based on the filing of her third DFEH complaint while employed by the terms of the [CAP]," and by "starting an active campaign to get Ms. Williams removed from the company." Opp. to Mot. to Dismiss at 5. Like in *Lamke*, these allegations are merely a repackaging of Plaintiff's wrongful termination claim. And, like in *Lamke*, they do not meet the narrow exception outlined by the California Supreme Court in *Guz*.[4] Nor can they. Though Plaintiff requests leave to allege "a claim viable under *Guz*," she gives no indication *how* she would set forth such an allegation. *Cf. McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1153 (N.D. Cal. 2002) (denying summary judgment on an implied covenant claim because a fact finder could have concluded that defendant, by retaliating against the plaintiff, intended to frustrate the plaintiff's legitimate expectations of entitlement to a commission). Unlike in *McCollum*, Plaintiff here does not identify any additional benefit the CAP conferred to her above and beyond the at-will employment relationship she already had with Defendant.

---

[4] Further, Plaintiff fails to show that the CAP created an implied contract for continued employment "assuming she met the requirements set forth in the [CAP]," Opp. at 5, as the CAP itself contains language stating that Gyrus "reserves the right to issue further discipline *up to and including termination* for any lawful reason including, but not limited to, your failure to meet performance objectives." *See* SAC Exh. I at 2 (emphasis added).

6

1    Plaintiff's allegations, coupled with the language of the CAP itself, *see* SAC Exh. I, show
2    that, even if the CAP is construed as an employment agreement separate from Plaintiff's at-will
3    employment contract, it does not confer upon her any benefits beyond that at-will employment
4    relationship. In fact, the CAP reiterates Plaintiff's at-will status. *See* SAC Exh. I. As such,
5    Plaintiff's eighth cause of action against Gyrus, for breach of the implied covenant of good faith
6    and fair dealing, is DISMISSED, with prejudice.

### B.    Disparate Treatment and Adverse Impact

Plaintiff's ninth cause of action alleges only that "[a]t the time of her termination, Defendants' practice of eliminating senior employees such as plaintiff had a disparate impact on [Olympus'] workforce." SAC ¶ 123. Plaintiff, though, does not allege what *type* of disparate impact Defendant's policies had on the workforce. Recognizing the bare-bones nature of this claim, Plaintiff's opposition states that she is a member of several protected classes, and that she was terminated in a manner which "suggests a discriminatory motive." Opp. to Mot. to Dismiss at 6-7. She then asks for leave to amend to "clarify" her claim, *id.* at 7, but does not indicate how she would do so.

Plaintiff fails to identify any independent cause of action for disparate treatment in California or federal law. Disparate treatment is a theory of liability under which a party can bring a cause of action for various forms of discrimination. *See, e.g.*, *Guz*, 24 Cal. 4th 317, 378 ("California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, *based on a theory of disparate treatment*.") (emphasis added); *see also Jones v. Department of Corrections & Rehabilitation*, 152 Cal. App. 4th 1367, 1379 (2007) ("[T]here are two types of illegal employment discrimination under FEHA: disparate treatment and disparate impact."). The "under FEHA" language in *Jones* is particularly important in this case: Plaintiff, in her first and second causes of action, alleges claims for age and race discrimination under FEHA. *See* SAC ¶¶ 69-87. Plaintiff's disparate treatment claim is merely a theory of liability that she may assert under her claims brought pursuant to FEHA. *Cf. Guz*, 24 Cal. 4th at 377-78.

Plaintiff requests leave to amend to clarify her ninth cause of action, but, as discussed

herein, Plaintiff cannot bring a common law claim for disparate treatment outside the relevant statutory framework – in this case, FEHA. Plaintiff, having been given leave to amend once prior to clarify her wrongful termination claims under FEHA, *see* Dismissal Order, ECF 54 at 8, has already asserted claims for age and race discrimination under FEHA in the SAC. She may allege disparate treatment as a theory of liability on those claims. But further amendment to attempt to plead an independent disparate treatment cause of action would be duplicative of claims already pled. Therefore, Plaintiff's ninth cause of action against Gyrus is DISMISSED, with prejudice. *Cf. Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. ORDER

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with regard to Plaintiff's seventh, eighth, and ninth causes of action, with prejudice.

**IT IS SO ORDERED.**

Dated: January 12, 2015

_____
BETH LABSON FREEMAN
United States District Judge